**RICHIE FONTAINE, Appellant/Defendant**
**v.**
**PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff**

S. Ct. Crim. No. 2010-0029
Supreme Court of the Virgin Islands
April 12, 2012

574

JAMES BERNIER, JR., ESQ., JOHN W. STRYKER, ESQ., SABRINA J. COHEN, ESQ., Stryker, Duensing, Casner & Dollison, St. Thomas, USVI, *Attorneys for Appellant.*

BERNARD M. VANSLUYTMAN, ESQ., Solicitor General, MATTHEW C. PHELAN, ESQ., Assistant Attorney General, St. Thomas, USVI, *Attorneys for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(April 12, 2012)

HODGE, *Chief Justice.* Appellant Richie Fontaine appeals from the Superior Court's June 4, 2010 Judgment and Commitment, which adjudicated him guilty of numerous offenses stemming from a March 7, 2009 shooting at a night club located in the East End of St. Thomas.[1] For the reasons that follow, we will reverse Fontaine's convictions and remand the matter for a new trial.

## I. STATEMENT OF FACTS AND PROCEDURAL POSTURE

On March 7, 2009, Phillip George ("Phillip") and his brother, Ruben George ("Ruben"), were present outside the entrance of the night club, along with four other people. At approximately 2:00 A.M., several individuals began to fire shots at Phillip from across the street. Phillip subsequently obtained a firearm and, along with other men, returned fire at the assailants. During this altercation, Phillip was shot, and one of the many bullets travelled through two walls into the night club and struck James King in the head. While King ultimately survived his injury, Phillip died from his wounds. On March 15, 2009, the police interviewed Ruben,

---

[1] The incident occurred in the Club Lexus nightclub in Coki Point Plaza.

who — according to the officer who interviewed him — stated that he and Phillip had encountered Fontaine in a different bar earlier that night, at which point Phillip had asked Fontaine to pay him money that he owed. In addition, Ruben allegedly told the police that he had seen Fontaine on the ramp of the night club with a pistol in his hand, and identified Fontaine as one of the individuals who shot at him and Phillip.

On October 28, 2009, Fontaine was arrested and charged with nine offenses, all related to the shooting of Phillip and King.[2] Fontaine's jury trial began on April 7, 2010 and concluded on April 10, 2010. Throughout the trial, Fontaine objected to numerous evidentiary rulings by the trial judge, including the judge's decision to allow a police officer who had not been present at the time of the shooting to narrate a surveillance tape that had been admitted into evidence. In addition, the trial judge permitted jurors in the case to submit questions to ask the witnesses, which the trial judge screened without providing counsel for either party an opportunity to object outside the presence of the jury. Although at trial Ruben denied that he had previously identified Fontaine as a shooter, Fontaine was ultimately convicted of voluntary manslaughter as a lesser-included offense to first degree murder, first degree assault, unauthorized use of a firearm during a first degree assault, and reckless endangerment.

The Superior Court orally sentenced Fontaine on May 19, 2010 to ten years incarceration for voluntary manslaughter, fifteen years incarceration for first degree assault, twenty years incarceration for unauthorized use of a firearm during a first degree assault, and five years incarceration for reckless endangerment. Except for his sentence for first degree assault — which was to run concurrently with his sentence for voluntary manslaughter — the Superior Court ordered all sentences to run consecutively. On June 2, 2010, the Superior Court memorialized its sentence in a written Judgment and Commitment, which was entered on June 4, 2010. Fontaine timely filed his notice of appeal on May 26, 2010.[3]

---

[2] Specifically, Fontaine was initially charged with first degree murder, unauthorized use of a firearm during a first degree murder, attempted first degree murder, unauthorized use of a firearm during an attempted first degree murder, two counts of first degree assault, two counts of unauthorized use of a firearm during a first degree assault, and reckless endangerment in the first degree.

[3] A notice of appeal filed after the announcement of an order or judgment, but before the entry of a writing memorializing same, is "treated as if filed on the date of and after entry . . . and

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

"The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." V.I. CODE ANN. tit. 4 § 32(a). Since the June 4, 2010 Judgment and Commitment constitutes a final judgment, this Court possesses jurisdiction over Fontaine's appeal.

Ordinarily, the standard of review for this Court's examination of the Superior Court's application of law is plenary, while the Superior Court's factual findings are only reviewed for clear error. *See St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007). In *Latalladi v. People*, 51 V.I. 137, 145 (V.I. 2009), we refined the standard by which this Court reviews a challenge to the sufficiency of the evidence leading to conviction:

> When appellants challenge the sufficiency of the evidence presented at trial, it is well established that, in a review following conviction, all issues of credibility within the province of the jury must be viewed in the light most favorable to the government. *United States v. Gonzalez*, 918 F.2d 1129, 1132 (3d Cir. 1990) (citing *Glasser v. United States*, 315 U.S. 60, 80, 62 S. Ct. 457, 469, 86 L. Ed. 680 (1942)). The appellate court "must affirm the convictions if a rational trier of fact could have found the defendants guilty beyond a reasonable doubt and the convictions are supported by substantial evidence." *Id.* This evidence "does not need to be inconsistent with every conclusion save that of guilt" in order to sustain the verdict. *United States v. Allard*, 240 F.2d 840, 841 (3d Cir. 1957) (citing *Holland v. United States*, 348 U.S. 121, 75 S. Ct. 127, 99 L. Ed. 150, 1954-2 C.B. 215 (1954) *rehearing denied*, 348 U.S. 932, 75 S. Ct. 334, 99 L. Ed. 731 (1955)). An appellant who seeks to overturn a conviction on insufficiency of the evidence grounds bears "a very heavy burden." *United States v. Losada*, 674 F.2d 167, 173 (2d Cir. 1982).

Moreover, unless its decision involves application of a legal precept — in which case this Court would exercise plenary review — this Court only

is considered timely filed" even though it is premature. *Shoy v. People*, 55 V.I. 919, 924 n.2 (V.I. 2011) (citing V.I.S.CT.R. 5(b)(1)).

reviews the Superior Court's evidentiary decisions for abuse of discretion. *Corriette v. Morales*, 50 V.I. 202, 205 (V.I. 2008).

## B. Sufficiency of the Evidence

Fontaine, as his first issue on appeal, contends that the evidence was insufficient to support all four of his convictions. Specifically, Fontaine argues that the evidence is insufficient to sustain his convictions for voluntary manslaughter because the People presented no evidence that Phillip was killed as the result of a sudden argument, and for all other charges because the People failed to prove that he was the shooter or that he had aided and abetted another.

■ Before addressing the merits of these claims, we note that it is highly unclear whether the People intended to charge Fontaine as a principal who personally committed the murder and other crimes, as a principal by virtue of being an aider and abettor under section 11(a) of title 14 of the Virgin Islands Code, or both. This distinction is not academic, for the elements the People must prove to establish culpability as an aider and abettor differ from the elements necessary to establish liability as a principal actor. "In order to establish the offense of aiding and abetting, the [People] must prove . . . that the substantive crime has been committed and that the defendant knew of the crime and attempted to facilitate it," and must also produce "proof that the defendant had the specific intent to facilitate the crime [of first degree murder]." *Brown v. People*, 54 V.I. 496, 505 (V.I. 2010) (citations omitted). As an example in this case, to convict Fontaine of first degree assault as a principal actor, the People would be required to prove, beyond a reasonable doubt, that Fontaine assaulted another with the intent to commit murder, *see* 14 V.I.C. § 295(1); yet to convict Fontaine of first degree assault as an aider and abettor, the People would have had to prove that someone else committed a first degree assault, but that Fontaine knew of the first degree assault and specifically did some act intending to facilitate its commission. *Brown*, 54 V.I. at 505.

Both the initial Information — filed on November 18, 2009 — and the Second Amended Information — filed halfway through Fontaine's trial — provide, for all counts, that Fontaine was "aided and abetted *by* another," (J.A. 24-26), and do not in any way allege that Fontaine aided and abetted a different individual in committing the substantive offense. Likewise, in its preliminary jury instructions, the Superior Court stated

the elements of the charged offenses as if Fontaine had himself committed the substantive offenses, as opposed to having aided and abetted a different individual. (Trial Tr. Vol. II 36-43.) Nevertheless, during its opening statement the People's counsel stated that "[Fontaine] killed Phillip George, and he shot James King in the head," (Trial Tr. Vol. II, 61), but then proceeded to say that "[w]e charged him, the defendant, with aiding and abetting." (Trial Tr. Vol. II, 61.) Moreover, in its closing arguments, the People again argued to the jury that it could find Fontaine guilty regardless of whether he was the actual shooter.[4] Creating still more confusion, however, is the fact that the Superior Court, in its final jury instructions, instructed the jury as if Fontaine had *solely* been charged with aiding and abetting another person, and did not instruct it on the elements needed to find him guilty as a principal actor. (Trial Tr. Vol. IV. 332-34).

While this Court is concerned with the way the People charged Fontaine in this case, we recognize that Fontaine has not raised any of these issues in his appellate brief, nor lodged any objections to the charging documents during the Superior Court proceedings. On the contrary, the arguments in his appellate brief — some of which assume Fontaine was charged as an aider and abettor, while others assume the People had to prove that he committed the substantive offense — as well as the evidence and arguments presented by Fontaine at trial, satisfy this Court that Fontaine understood the People to have charged him as having committed the substantive offenses himself or, in the alternative, aiding and abetting the commission of those offenses by someone else. Importantly, the record contains no indication that Fontaine was surprised by how he was charged or otherwise lacked sufficient notice to defend the charges against him. *See Gov't of the V.I. v. Joseph*, 765 F.2d 394, 397-98 (3d Cir. 1985). Thus, at best, this issue could only be reviewed under the

---

[4] For example, during closing arguments counsel for the People first read to the jury portions of Ruben George's prior out-of-court statement, in which he had told the police that "[Fontaine] went downstairs and walked across the street and he began to open fire on us," and that "[Phillip] began to fire back at Richie," which is "when he got shot." (Trial Tr. Vol. IV. 265, 268.) However, after Fontaine's counsel concluded his closing argument, the People's counsel told the jury that "the Judge will give you those instructions that we don't even have to prove that Richie Fontaine even fired a gun under aiding and abetting, for which he is charged. Simply being at the scene and encouraging others and associat[ing] himself with the acts are sufficient to hold him liable." (Trial Tr. Vol. IV. 305.)

plain error standard of review.[5] *Francis v. People*, 52 V.I. 381, 390 (V.I. 2009).

Although the information, by stating that Fontaine was "aided and abetted *by* another," clearly only charged Fontaine as a principal actor, the information also clearly cited to section 11 of title 14, and federal courts have consistently construed 18 U.S.C. § 2 — the federal aiding and abetting statute, which contains virtually identical language as section 11 of title 14 — as permitting a defendant to be charged solely as a principal actor in an information or indictment and then be convicted based solely on evidence that he aided and abetted a different individual. *See United States v. Forsythe*, 560 F.2d 1127, 1136 n.15 (3d Cir. 1977) ("[T]he indictment need not specifically charge aiding and abetting in order to support a conviction for aiding and abetting. The indictment must be read as if 18 U.S.C. § 2 were embodied in each count."); *see also United States v. Kegler*, 724 F.2d 190, 200-01, 233 U.S. App. D.C. 58 (D.C. Cir. 1983); *United States v. Frye*, 548 F.2d 765, 767 n.4 (8th Cir. 1977); *Grant v. United States*, 291 F.2d 746, 748-49 (9th Cir. 1961). This Court, in interpreting a local Virgin Islands statute, is not mandated to reach the same result as a federal court interpreting an analogous federal statute. *See Gov't of the V.I. v. Lewis*, 620 F.3d 359, 364 n.5, 54 V.I. 882 (3d Cir. 2010) ("In the absence of controlling Virgin Islands precedent, we believe that our analogy to [prior federal case law construing an analogous federal provision] is necessary to decide the case before us. We are mindful, of course, that the authority to interpret [a Virgin Islands Code provision] lies centrally with the newly created Supreme Court of the Virgin Islands."). Nevertheless, even if this Court were inclined to depart from these federal authorities, the absence of any prior guidance from this Court as to how aiding and abetting must be charged, combined with the existence of such extensive federal case law — including from the United States Court of Appeals for the Third Circuit — would defeat the second prong of the plain error test. *See Murrell v. People*, 54 V.I. 338, 366 (V.I. 2010) (explaining that an error is "plain" only if the error is clear under

---

[5] For this Court to reverse the judgment of the Superior Court under the plain error standard of review, "there must be (1) 'error,' (2) that is 'plain,' and (3) that 'affect[s] substantial rights.' " *Francis*, 52 V.I. at 390 (quoting *Johnson v. United States*, 520 U.S. 461, 466-67, 117 S. Ct. 1544, 137 L. Ed. 2d 718 (1997)). However, even "[i]f all three conditions are met," this Court would reverse the Superior Court "only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 390-91.

current law, and thus "there can be no plain error where there is no precedent . . . directly resolving it.") (quoting *United States v. Lejarde-Rada*, 319 F.3d 1288, 1291 (11th Cir. 2003)). Moreover, as explained more fully below, the People introduced sufficient evidence to sustain Fontaine's convictions under either theory, but Fontaine is entitled to a new trial on different grounds.

■ Under these circumstances, we decline to decide, *sua sponte* and without the benefit of any briefing by the parties, whether any errors occurred with respect to how Fontaine was charged or how the charges were explained to the jury. Rather, this Court shall — like the parties — proceed as if Fontaine was alternatively charged as a principal actor or an aider and abettor, and analyze the sufficiency of the evidence under both theories. We caution, however, that because this Court has declined to exercise its discretion to decide this issue as part of this appeal, its decision to review the sufficiency of the evidence under both theories should not be construed as a holding that the People were or were not permitted to charge Fontaine in the manner it did in this case.

### 1. *Sudden Argument Element of Voluntary Manslaughter*

In his appellate brief, Fontaine argues that the evidence is insufficient to sustain his conviction for voluntary manslaughter because Ruben George provided the only testimony pertaining to the relationship between Phillip and Fontaine, and he testified only that Phillip asked Fontaine for money owed, and Fontaine "simply told him he was unable to pay" at that time. (Appellant's Br. 9.) Moreover, Fontaine contends that "[t]here was no evidence presented of raised voices or immediate violence" or of any "excitement" that could support the "sudden quarrel or heat of passion" element of a voluntary manslaughter charge.[6] (*Id.*) In other words, Fontaine essentially argues that he should be acquitted of voluntary manslaughter because the evidence in the record demonstrates that — regardless of whether Fontaine was charged as a principal actor or an aider and abettor — Phillip had been killed with premeditation — the intent necessary to sustain a conviction for first degree murder — and not in the heat of passion.

---

[6] "Manslaughter is the unlawful killing of a human being without malice aforethought. It is of two kinds . . . (1) voluntary; upon a sudden quarrel or heat of passion . . . ." 14 V.I.C. § 924(1).

581

■ Although not addressed by the parties in their briefs, we note that the People charged Fontaine with first degree murder, and the jury convicted Fontaine of voluntary manslaughter as a lesser-included offense pursuant to the trial judge's final jury instructions. Ordinarily, "for a jury to convict a defendant on a lesser included offense that is not charged in the information, there must be 'a reasonable ground of doubt' [as to which of two degrees of the crime a defendant may be guilty of in order] for the jury to find that the defendant committed the lesser offense but not the higher offense." *Phipps v. People*, 54 V.I. 543, 551 (V.I. 2011) (quoting 5 V.I.C. § 3635). However, the same argument that Fontaine sets forth in his brief for reversing his voluntary manslaughter conviction — that the record is completely devoid of any evidence that Phillip was killed as a result of a sudden quarrel or in the heat of passion — also supports the proposition that the Superior Court should never have instructed the jury that it could convict Fontaine of voluntary manslaughter as a lesser included offense. Importantly, at trial Fontaine contended that Ruben's testimony *supported* the "sudden quarrel or heat of passion" element of voluntary manslaughter, and therefore requested — over the People's objection — that the Superior Court instruct the jury on voluntary manslaughter as a lesser-included offense. (Trial Tr. Vol. IV 245-50.)

■ Recognizing the inherent unfairness of allowing a defendant to benefit twice from an erroneous lesser included offense instruction offered by the defendant — first from being acquitted by the jury on the greater offense, and then having the conviction reversed on sufficiency of the evidence grounds by an appellate court on the lesser included offense — appellate courts have generally held that a defendant who requests that the jury be instructed on a lesser included offense not charged in the information is barred from raising the sufficiency of the evidence to sustain a conviction for that lesser included offense as an issue on appeal if the evidence was sufficient to convict the defendant of the greater offense. *Compare State v. Espinosa*, 686 So.2d 1345, 1348 (Fla. 1996) ("[W]e do not believe that a defendant who requests an instruction on a lesser-included offense should be allowed to complain on a sufficiency of the evidence claim on the lesser-included offense when sufficient evidence exists to convict the defendant for the greater offense.") *with State v. Parker*, 350 S.W.3d 883, 909 (Tenn. 2011) (holding, in case where judge instructed second degree murder as a lesser-included offense *sua sponte*, defendant may challenge sufficiency of second degree murder

conviction on appeal even though evidence was sufficient to establish elements of first degree murder). *See also People v. Daniels*, 75 A.D.3d 1169, 904 N.Y.S.2d 859, 861-62 (N.Y. App. Div. 2010); *Parrish v. Commonwealth*, Record No. 1369-09-2, 2010 Va. App. LEXIS 186, at *2 (Va. Ct. App. May 11, 2010) (unpublished).

██ We recognize, however, that the Appellate Division of the District Court has rejected this rule, and expressly held that it will permit a criminal defendant to challenge, on appeal, the sufficiency of a manslaughter conviction even if the manslaughter charge was only presented to the jury as the result of a trial judge granting the defendant's request for a lesser included offense instruction. *See Boston v. Gov't of the V.I.*, 46 V.I. 520, 526-29 (D.V.I. App. Div. 2005) (permitting sufficiency review under similar murder/manslaughter facts which are functionally indistinguishable from this case). Nevertheless, we decline to adopt the reasoning of *Boston*. Importantly, we note that the District Court in *Boston* reached its decision only by concluding that the doctrine of judicial estoppel[7] did not apply and rejecting the *Espinosa* court's rationale that it is unfair for a defendant to request the jury to exercise its "pardon power" at trial and then attack its decision on appeal. *Id.* at 526-27. However, the District Court in *Boston* did not address the invited error doctrine in its decision. As we have explained in our prior holdings, the invited error doctrine precludes errors stemming from erroneous jury instructions proposed by a defendant's counsel from forming the basis for reversal. *See Latalladi*, 51 V.I. at 143-44.

██ In this case, Fontaine requested the voluntary manslaughter instruction from the Superior Court on the grounds that Ruben's testimony established the "sudden quarrel or heat of passion" element of voluntary manslaughter, but argues that this Court should set aside his

---

[7] As the Appellate Division explained,

> Judicial estoppel is "estoppel that prevents a party from contradicting previous declarations made during the same or a later proceeding if the change in position would adversely affect the proceeding or constitute a fraud on the court." Black's Law Dictionary 571 (7th ed. 1999). It has also been termed the "doctrine of preclusion of inconsistent positions." *Id.* The Third Circuit considers judicial estoppel to be "an extraordinary-remedy to be invoked when a party's inconsistent behavior will otherwise result in a miscarriage of justice." *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 365 (3d Cir. 1996) (quotation omitted).

*Boston*, 46 V.I. at 526.

conviction because that very same testimony cannot possibly establish that element. To the extent that Ruben's testimony established this element — Fontaine's position at trial — the evidence would be sufficient to sustain the voluntary manslaughter conviction. Yet, if Ruben's testimony, no matter how interpreted, could only establish a premeditated killing rather than a killing made as a result of a sudden quarrel or in the heat of passion — Fontaine's position on appeal — then the jury should never have been instructed on voluntary manslaughter in the first place, and Fontaine invited the error by requesting the erroneous instruction from the Superior Court over the People's objection. Since Fontaine does not dispute that the evidence was clearly sufficient to establish the premeditation element of first degree murder, we decline to review the sufficiency of the evidence of the voluntary manslaughter conviction because — even if the People did not establish the "sudden quarrel or heat of passion" element — the invited error doctrine would preclude this Court from reversing the conviction.[8]

### 2. Fontaine as a Principal Actor

Fontaine further argues that, to the extent he was charged as having personally committed the substantive offenses, he is entitled to an acquittal because "[t]he People failed to provide evidence that a reasonable jury can rely on to identify [Fontaine] as a shooter." (Appellant's Br. 6.) Specifically, Fontaine contends that "there was no physical evidence tying [him] to the crime, and the limited eyewitness testimony only confirmed that [he] was at [the nightclub] the night of the shooting with many other patrons." (*Id.*)

We find that Fontaine's argument lacks merit. As a threshold matter, the implication that a lack of physical evidence tying Fontaine to the charged offenses, without more, renders the evidence insufficient "is in direct contradiction to the standard of review for evaluating the sufficiency of the evidence," *Augustine v. People,* 55 V.I. 678, 684 (V.I. 2011), which requires this Court to view all of the evidence in the light most favorable to the People without independently weighing the

---

[8] Given the applicability of the invited error doctrine to this case, we decline to decide, as part of this appeal, whether a defendant who requested and received a lesser included offense instruction would be precluded from challenging the sufficiency of the evidence on appeal if a "reasonable ground of doubt," 5 V.I.C. § 3635, did — in fact — exist.

evidence or viewing certain types of evidence as inherently more credible. *Latalladi*, 51 V.I. at 145. More significantly, Fontaine fails to acknowledge that, at trial, the People introduced, as substantive evidence, an out-of-court statement to the police attributed to Ruben, which stated that Ruben saw Fontaine fire a pistol at him and Phillip.[9] (Trial. Tr. Vol. II 94-95; Vol. III 247-53.) Importantly, while Ruben expressly repudiated, during his in-court testimony, the contents of this statement — including the identification of Fontaine as the shooter — the jury was clearly permitted to resolve the conflict by crediting the out-of-court statement. *See Stevens v. People*, 52 V.I. 294, 306 (V.I. 2009); *see also Augustine*, at

---

[9] Although Fontaine challenged the admissibility of this statement in his brief pursuant to the Federal Rules of Evidence, at oral argument Fontaine's counsel acknowledged that section 19 of title 14 of the Virgin Islands Code permitted the statement to be introduced as substantive evidence. This statute provides, in its entirety, as follows:

Evidence of a prior statement, oral or written, made by a witness is not made inadmissible by the hearsay rule if the prior statement is inconsistent with his testimony at a hearing or trial. After the witness has been given an opportunity at such hearing or trial to explain or deny the prior statement, the court shall allow either party to prove that the witness has made a prior statement, oral or written, inconsistent with his sworn testimony. Such prior statement shall be admissible for the purpose of affecting the credibility of the witness or for proving the truth of the matter asserted therein if it would have been admissible if made by the witness at the hearing or trial. Each party shall be allowed to cross-examine the witness on the subject matter of his current testimony and the prior statement.

14 V.I.C. § 19. But in any event, "when an appellate court reviews the sufficiency of the evidence, it must 'consider all the evidence the [jury] had before it, including any evidence that is later determined to be inadmissible.' " *Ambrose v. People*, S. Ct. Crim. No. 2007-0041, 2012 V.I. Supreme LEXIS 1, at *12 (V.I. Jan. 3, 2012) (quoting *State v. Frazier*, 2001 SD 19, 622 N.W.2d 246, 261 (S.D. 2001)). *See also McDaniel v. Brown*, 130 S. Ct. 665, 672, 175 L. Ed. 2d 582 (2010) ("Respondent therefore correctly concedes that a reviewing court must consider all of the evidence admitted at trial when considering a [sufficiency of the evidence] claim."). We emphasize, however, that because Fontaine's counsel has withdrawn his argument that Ruben's statement was not admissible as substantive evidence, as well as the fact that the Superior Court applied the — now repealed — Uniform Rules of Evidence to this case, we take no position as to whether section 19 of title 14 remains viable or was implicitly repealed when the Legislature enacted Act No. 7161. *Compare* Act No. 7161 § 15(a) ("[T]he legal community and the Territory would greatly benefit from adopting the Federal Rules of Evidence which will alleviate the current ambiguity and discrepancies in the application of the law.") *with People v. Donastorg*, 54 V.I. 22, 36 (V.I. Super. Ct. 2010) (applying 14 V.I.C. § 19 despite acknowledging passage of Act No. 7161). Consequently, our observation herein is not intended to preclude the Superior Court from, on remand, revisiting the issue of whether the People may, in light of Act No. 7161, introduce Ruben's prior inconsistent statement as substantive evidence.

684 (noting that this Court is "prohibited from weighing the evidence or determining the credibility of witnesses" during a sufficiency of the evidence analysis). Therefore, the People introduced sufficient evidence that Fontaine had personally committed the charged offenses.

### 3. *Fontaine as Aider and Abettor*

■ Similarly, Fontaine contends that, under an aiding and abetting theory, the People failed to introduce any admissible evidence that an individual other than Fontaine committed any of the charged offenses or that Fontaine knew of or attempted to facilitate those crimes. However, in his out-of-court statement to the police, Ruben stated that he saw "[t]he other guy wh[o] was with Richie," who he identified only as "Alpha," and that he saw "[t]he other person Alpha also beg[i]n to shoot at [them]," along with Fontaine. (Trial. Tr. Vol. III 250-52.) The jury, were it to credit this statement, could certainly have concluded that it was Alpha, and not Fontaine, that had fired the shot that killed Phillip, and reasonably inferred that Fontaine — by firing a gun at Phillip and Ruben while Alpha was also shooting at those same individuals — was both aware that Alpha intended to kill Phillip and wished to facilitate him in accomplishing that goal. *See United States v. Miller*, 283 F.3d 907, 913 (8th Cir. 2002) (holding that, when defendants acted in concert and conflicting evidence was introduced as to which defendant fired the fatal shot, the jury could conclude that the defendant who did not fire fatal shot is guilty as an aider and abettor); *see also Nanton v. People*, 52 V.I. 466, 486-87 (V.I. 2009) (holding evidence sufficient for aiding and abetting upon testimony that defendant was one of three assailants). Consequently, the evidence was sufficient to sustain Fontaine's convictions even under an aiding and abetting theory.

### C. Narration of Surveillance Video

On appeal, Fontaine also challenges numerous evidentiary rulings made by the Superior Court throughout the course of Fontaine's trial, including its decision to allow Corporal Delbert Phipps — a police officer who was not present at the night club at the time of the shooting — to narrate a surveillance videotape of the night club as it played to the jury. At trial, the Superior Court permitted Corporal Phipps to render lay opinion testimony that would aid the jury's understanding of the video, notwithstanding the fact that he was neither qualified as an expert nor a

witness to the shooting itself. (Trial Tr. Vol. III 52-53.) *See* 5 V.I.C. § 911(1); FED. R. EVID. 701[10] ("If the witness is not testifying as an expert his testimony in the form of opinions or inferences is limited to such opinions or inferences as the judge finds (a) may be rationally based on the perception of the witness and (b) are helpful to a clear understanding of his testimony or to the determination of the fact in issue."). During his lengthy narration, which consumed approximately 150 pages of the trial transcript, Corporal Phipps testified, among other things, that the videotape showed Fontaine with a firearm in his hand, (Trial Tr. Vol. III 76-77, 91), and identified certain individuals as being "part of Mr. Fontaine's group" or "with" Fontaine, notwithstanding the fact that Fontaine was not actually shown in the videotape with these individuals at the time this identification was made. (Trial Tr. Vol. III 80-86, 93, 97.) Moreover, Corporal Phipps testified to bullets ricocheting in various directions, identified the location of gunshot indentations in the

---

[10] When jury selection occurred on April 6, 2010, "the 1953 version of the Uniform Rules of Evidence ('URE'), codified as 5 V.I.C. §§ 771-956, appl[ied] to evidentiary issues in local Virgin Islands Courts." *Blyden v. People*, 53 V.I. 637, 658 n.15 (V.I. 2010), *aff'd*, 437 Fed. Appx. 127 (3d Cir. 2011). But "on March 26, 2010 the Legislature approved, and on April 7, 2010 the Governor signed into law, Act No. 7161, section 15 of which repealed the local URE" and replaced it with the Federal Rules of Evidence ("FRE"). *Id.* Importantly, neither the parties nor the Superior Court disclosed their awareness of Act No. 7161 until April 9, 2010, after both the prosecution and the defense had rested their cases. (Trial Tr. Vol. IV 242.) Significantly, when the trial judge informed the parties of the change in the law, he stated that the Governor had signed Act No. 7161 "in the middle of this trial," implying that Act No. 7161 became law at some point after the People had already begun to present evidence on April 7, 2010. (*Id.*) Ultimately, the Superior Court held that it would apply the URE because "[w]e started out applying the Uniform Rules of Evidence," "[e]verybody was on board with the Uniform Rules of Evidence," and the trial judge did not believe that Act No. 7161 could apply "to a trial that started but had not been yet completed." (*Id.*) Nevertheless, Fontaine and the People, in their appellate briefs, both rely exclusively on the Federal Rules of Evidence, with either minimal or no explanation as to why they believe the Superior Court erred in holding that the URE applied to Fontaine's trial notwithstanding Act No. 7161.

We recognize that, with respect to some of the evidentiary issues raised by Fontaine as part of this appeal, the differences between the FRE and the URE could impact this Court's analysis. However, this Court has previously held that Federal Rule of Evidence 701 and the former sections 911(1) and 911(2) of title 5 of the Virgin Islands Code essentially incorporate the same legal standards. *See Mulley v. People*, 51 V.I. 404, 417-18 (V.I. 2009) (citing *Ritter v. People*, 51 V.I. 354, 364-65 (V.I. 2009)). Therefore, because "consideration under either rule would reach the same result" — a new trial — with respect to this issue, *id.*, we decline to definitively determine, in the absence of briefing by the parties, what actions — if any — the Superior Court should have taken under these highly unusual circumstances.

night club building, and mentioned that he had seen "clearer image[s]" during his prior viewings of the tape. (Trial Tr. Vol. III 101-04, 110-11, 134-35. 137.) According to Fontaine, Corporal Phipps should not have been allowed to testify because (1) he had not been a witness to the shooting or otherwise present at the scene of the crime, (2) the video was not of poor quality and, in any event, he possessed no specialized knowledge of forensic video analysis and had otherwise not been qualified as an expert, and (3) although he had spent several hours viewing the video and had investigated the case, his narration could not have assisted the jury. (Appellant's Br. 16.)

██ ██ We agree. With respect to lay witnesses rendering opinion testimony on surveillance videotapes and photographs, courts generally consider "the condition of the surveillance pictures, the familiarity of the witness with the person's appearance at the time the picture was taken, and whether the person was disguised or has since altered his appearance." *Commonwealth v. Pleas*, 49 Mass. App. Ct. 321, 729 N.E.2d 642, 645-47 (Mass. Ct. App. 2000) (collecting cases). Consistent with these factors, courts have consistently held that, if an individual is not properly qualified as an expert, did not witness the depicted events while present at the scene of the crime, and lacks greater ability to correctly identify the defendant than the jury, that individual is prohibited from testifying to what is being shown on a surveillance video. *See, e.g., United States v Shabazz*, 564 F.3d 280, 287 (3d Cir. 2009); *United States v. Dixon*, 413 F.3d 540, 545 (6th Cir. 2005); *State v. Buie*, 194 N.C. App. 725, 671 S.E.2d 351, 354-56 (N.C. Ct. App. 2009); *Gonzales v. State*, No. 2-04-466-CR, 2006 Tex. App. LEXIS 2518, at *9-10 (Tex. App. Mar. 30, 2006) (unpublished); *see also Robinson v. People*, 927 P.2d 381, 384 (Colo. 1996) ("[A] lay witness may testify regarding the identity of a person depicted in a surveillance photograph if there was some basis for concluding that the witness is more likely to correctly identify the defendant from the photograph than is the jury."). In this case, the video tape was of good quality,[11] the jury visited the site of the shooting and personally observed Fontaine, King, and Ruben in the courtroom, and

---

[11] During trial, counsel for the People represented that the video tape was "very clear," (Trial Tr. Vol. III 22), as did Fontaine's counsel. (Trial Tr. Vol. III 20.) Moreover, this Court, having independently viewed the tape after oral arguments, also finds that the video is of good quality.

there is no suggestion in the record that Fontaine in any way altered his appearance between trial and the day of the shooting. Thus, the jury possessed the same ability to identify the individuals in the videotape and the surroundings as Corporal Phipps. Consequently, the Superior Court abused its discretion when it allowed Corporal Phipps to narrate the videotape frame by frame.

▮ Nevertheless, despite the Superior Court's error, this Court, prior to ordering a new trial, must determine whether the error was harmless. If a procedural rule has been violated, the error is harmless if the record allows this Court to conclude "with fair assurance . . . that the judgment was not substantially swayed by the error." *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S. Ct. 1239, 90 L. Ed. 1557 (1946). The North Carolina Court of Appeals, in a case involving similar facts, explained what circumstances warranted granting a new trial as the remedy for the impermissible narration of a surveillance videotape by a police officer:

> Here, the record reflects that the State's case rested exclusively on the surveillance video and [the officer's] identification testimony. The State offered no fingerprint evidence, DNA evidence, or other identification testimony. Further, because the witness was a police officer with eighteen years of experience, the jury likely gave significant weight to [her] testimony. [The officer's] testimony identifying the individual depicted in the surveillance video as the Defendant played a significant if not vital role in the State's case, making it reasonably possible that, had her testimony been excluded, a different result would have been reached at trial.

*State v. Belk*, 201 N.C. App. 412, 689 S.E.2d 439, 443 (N.C. Ct. App. 2009).

▮ We find that these same circumstances warrant a new trial in this case. Unlike the facts considered in *Belk*, in the case at bar, Corporal Phipps's narration of the surveillance videotape, while a substantial part of the People's case, did not constitute the sole evidence against Fontaine, since Ruben's out-of-court statement, if credited by the jury, supported Fontaine's guilt as either a principal actor or an aider and abettor. However, the jury was under no obligation to credit the out-of-court statement, given that Ruben, in his in-court testimony, expressly stated that he never identified Fontaine as one of individuals shooting at him and his brother, (Trial Tr. Vol. II 102), and that the portion of the document

589

which relayed this version of events was not in his handwriting. (Trial Tr. Vol. III 256.) In other words, Corporal Phipps's narration, particularly his references to specific individuals in the videotape as being "with" Fontaine and to the direction of ricocheting bullets — none of which was supported by any other evidence in the record — as well as his identification of Fontaine holding a firearm, all served to bolster Ruben's out-of-court statement. Notably, like the officer in *Belk*, Corporal Phipps emphasized his substantial amount of experience — consisting of twenty-eight years with the Virgin Islands Police Department, including sixteen years with the Major Crime Team, (Trial Tr. Vol. III 54) — and thus the jury would have likely given his testimony "significant weight." *Belk*, 689 S.E.2d at 443. While it is true that the jury possessed the same ability as Corporal Phipps to view the videotape and reach its own conclusions — such as determining whether the individual identified by Corporal Phipps as being Fontaine was, in fact, the defendant,[12] or whether the object Corporal Phipps said that individual was holding was a firearm, or the direction of a bullet ricocheting off the building — the fact that the Superior Court permitted Corporal Phipps to make such an identification and explanation may well have reinforced a belief in the jury that Corporal Phipps possessed some sort of special knowledge or training that made his identifications more reliable than their own. Moreover, during a jury visit to the crime scene, the Superior Court permitted Corporal Phipps to testify to many of these same issues, and — in fact — permitted a juror to ask Corporal Phipps what distance the first bullet that hit the building had been fired from. (Trial Tr. Vol. IV 30.) Notably, the Superior Court stated that it chose to direct that question to Corporal Phipps and not to a different officer who had also testified because "[that officer] stated before that she is not a ballistic expert" and

---

[12] We note that, during the trial, the Superior Court stated that "if there is error at all, it would be harmless error to say that . . . this is Richie Fontaine when everybody can see that it's Richie Fontaine." (Trial Tr. Vol. III. 24.) While the record reflects that the trial judge permitted Corporal Phipps to narrate the videotape because he believed such testimony was admissible, we take this opportunity to emphasize that it is "not only the right but the duty of the trial judge to refuse to intentionally commit error, even 'harmless' error," *State v. Cullen*, 39 S.W.3d 899, 906 (Mo. Ct. App. 2001), for "the harmless error standard is applicable for appellate courts," not trial courts. *In re N.G.*, No. B232429, 2011 Cal. App. Unpub. LEXIS 9665, at *25 n.6 (Cal. Ct. App. 2011). In other words, whether or not an erroneous evidentiary decision may be disregarded as harmless error by this Court on appeal should play absolutely no role in how the Superior Court should exercise its discretion.

that therefore the judge "[didn't] think she would be competent to answer that question," (Trial Tr. Vol. IV 31), which the jurors may have interpreted as Corporal Phipps being qualified as an expert, notwithstanding the fact that the Superior Court had, with respect to narrating the videotape and testifying at the crime scene, only qualified Corporal Phipps to testify as a lay witness. In other words, a juror who may have been inclined to believe that the individual in the videotape was not Fontaine, or that the object in that individual's hands was not a firearm, or that the angle of the bullet flight could not have come from the location attributed to Fontaine, may have nevertheless deferred to Corporal Phipps due to his experience and the fact that he was permitted to testify as to these issues. Under these circumstances, there is a likelihood that the judgment could have been swayed by the Superior Court's error in permitting Corporal Phipps to testify as he did, and therefore we reverse the June 4, 2010 Judgment and Commitment and remand this matter for a new trial.[13]

## D. Use of Juror Questions

■ When this Court orders a new trial in a criminal case on one ground, it is not necessary for this Court to consider other issues raised by the appellant that, if sustained, would result in equal or lesser relief. *See Chinnery v. People*, 55 V.I. 508, 520 (V.I. 2011). Even so, this Court possesses the discretion to, "in the interests of judicial economy, nevertheless consider other issues that, while no longer affecting the outcome of the instant appeal, are 'likely to recur on remand.' " *Smith v. Turnbull*, 54 V.I. 369, 374 (V.I. 2010) (quoting *Rivera-Flores v. Puerto Rico Telephone Co.*, 64 F.3d 742, 749 (1st Cir. 1995)). Thus, given our holding that Fontaine is entitled to a new trial, we decline to address the remaining issues raised in Fontaine's appellate brief because they have either become moot,[14] are unlikely to recur on remand,[15] or should be

---

[13] "[A]s a general rule, 'the remedy for trial error is a new trial while a judgment of acquittal is the appropriate remedy when the evidence is not sufficient to sustain a conviction.' " *Farrell v. People*, 54 V.I. 600, 619 (V.I. 2010) (quoting *Gilbert v. People*, 52 V.I. 350, 364 (V.I. 2009)). Admission of evidence that should have been excluded constitutes a trial error. *Gilbert*, 52 V.I. at 364 n.11.

[14] For example, this Court's reversal of Fontaine's convictions renders moot his challenge to the Superior Court's sentence on the unauthorized use of a firearm charge.

considered by the Superior Court in the first instance in light of subsequent changes in the law.[16]

Nevertheless, we feel compelled to address one issue that, while not raised in Fontaine's appellate brief, was discussed during oral arguments. Shortly after counsel for both parties concluded their questioning of the first prosecution witness, the Superior Court asked if any of the jurors had any questions for the witness, and — when one juror raised her hand — requested that the juror "write it out . . . and pass it up" to the judge. (Trial Tr. Vol. II 113.) Fontaine's counsel immediately objected, indicating that he was not familiar with such procedure, but before he was able to fully articulate a particular basis for the objection, the judge stated that "[b]ecause something is a little different doesn't make it objectionable" and "that [the] Judicial College tells me I can do this, so I [am] kind of following their lead." (Trial Tr. Vol. II 114.) From that point forward, the judge would receive questions from the jurors after each witness's testimony and — without permitting either attorney to review or otherwise object to any particular question before it was asked — require the witness to answer the question. In some instances in which the judge found a particular question vague or difficult to understand, the judge would identify the juror who submitted the written question, authorize the juror to orally address the question to the witness directly, and — in some cases — ask follow-up questions. (*See, e.g.,* Trial Tr. Vol. II. 116; Vol. IV 30-31.) On some occasions, the judge would refuse to ask juror questions that, based solely on his review, he concluded were irrelevant or otherwise improper. (*See, e.g.,* Trial Tr. Vol. II 145.)

---

[15] For instance, Fontaine argued in his brief that he was unfairly prejudiced when, as a result of pausing the videotape during Corporal Phipps's narration, an image of Ruben and others trying to move Phillip's body was shown to the jury for an extended period of time. However, it is likely that, in light of this Court's decision, the surveillance videotape will not need to be repeatedly paused to accommodate the narration of a prosecution witness.

[16] As noted earlier, the Superior Court based all of its evidentiary decisions in Fontaine's first trial on the URE. However, Fontaine's new trial will unquestionably be governed by the FRE. While the FRE and the URE set forth virtually identical requirements with respect to lay opinion testimony, they differ in other areas, such as authentication of non-writings. *See Blyden,* 53 V.I. at 659. Therefore, because the Superior Court based all of its evidentiary decisions — such as its decision to admit the surveillance videotape into evidence — on the URE, we find that the interests of judicial economy will be best furthered by allowing the Superior Court to determine, on remand, whether the transition from the URE to the FRE requires reconsideration of any of its prior evidentiary rulings.

Because Fontaine failed to raise this as an issue in his appellate brief even though he objected to the procedure during trial, this Court would ordinarily only review the claim under the four-prong plain error test. *Francis*, 52 V.I. at 390. But since this Court has already ordered a new trial on different grounds and is solely addressing this issue to provide guidance to the Superior Court on an issue that will likely recur on remand, *Smith*, 54 V.I. at 374, we limit our discussion solely to the issue of whether the jury questioning procedure used in this case constituted 'error. We conclude that it did.

We recognize that multiple state and federal courts have authorized jurors to question witnesses, in some form, during criminal trials. *See United States v. Hernandez*, 176 F.3d 719, 723-24 (3d Cir. 1999); *see also United States v. Rawlings*, 522 F.3d 403, 407, 380 U.S. App. D.C. 378 (D.C. Cir. 2008) (collecting federal cases); *Morrison v. State*, 845 S.W.2d 882, 884 n.5 (Tex. Crim. App. 1992) (collecting state cases). However, in these jurisdictions the practice has been authorized through a court rule, statute, or an appellate court exercising its supervisory authority to approve of the practice. In the Virgin Islands, chapter 65 of title 5 of the Virgin Islands Code, which is titled "Procedure for Presentation of Evidence," governs how evidence is presented in civil and criminal cases in Virgin Islands local courts, while chapter 309 governs the conduct of criminal trials.[17] None of these statutory provisions authorize jurors to question any witnesses. Rather, sections 731 and 732 of chapter 65 vest the trial judge with some discretion over the order that evidence is presented and how witnesses may be questioned by the parties, while sections 733 through 736 authorize parties to question witnesses and establish guidelines for the scope of direct and cross-examination. Similarly, section 3631 of chapter 309 provides that, in criminal cases, the parties may introduce evidence, with no reference to jurors being able to question witnesses or otherwise produce evidence. Moreover, no court rule authorizes jurors to ask questions of witnesses,[18] and this Court has

---

[17] While Act No. 7161 repealed the URE located in chapter 67 of title 5 and replaced it with the Federal Rules of Evidence, the Legislature has not repealed any other provisions of Part V of title 5, including chapter 65.

[18] We emphasize that, although multiple federal courts have permitted trial judges to exercise their discretion to allow jurors to question witnesses, these holdings were not based on those appellate courts holding that the Federal Rules of Criminal Procedure or the Federal Rules

not previously exercised its inherent powers to expand the role of jurors in such a way.

■ As the Superior Court has recognized, written court rules are necessary to secure "uniformity in procedure" and "fairness in administration" in a trial court consisting of nine active judges, of which only one judge will preside over any given case. *See* SUPER. CT. R. 1. We recognize that it is inevitable that minor deviations in procedure will necessarily exist from judge to judge. However, whether jurors should ever be allowed to ask questions of witnesses, and — if so — what procedures should be implemented to safeguard a defendant's constitutional rights, are not minor issues in which differences between judges should be tolerated. Therefore, we have serious doubts as to the appropriateness of the Superior Court's actions when it haphazardly allowed jurors to question witnesses in this case, because it did so both in the absence of any written procedures permitting and regulating the practice and without implementing the safeguards necessary to protect a defendant's constitutional rights and to preserve the role of the jury as a neutral finder of fact.

■ Unfortunately, the trial judge in this case did not implement the procedures necessary to reconcile juror questioning of witnesses with Fontaine's constitutional right to a fair trial. First, by not permitting counsel for both parties to, outside the presence of the jury, review and object to specific juror questions before they were asked, counsel for both Fontaine and the People were forced to decide between objecting to a juror's question in open court — thus placing counsel "in a direct adversarial role with respect to the jury," *United States v. George*, 986 F.2d 1176, 1179 (8th Cir. 1993) — or permitting, without any objection, a witness to answer a question that, in the opinion of counsel, the witness should not be permitted to answer. Such an instance may well have occurred in this case when the Superior Court permitted a juror to ask Corporal Phipps what distance the first bullet that hit the building had

---

of Evidence vested trial judges with this discretion. Rather, the practice has been proliferated in the federal courts as the result of determinations by the pertinent federal court of appeals, in which the appellate court has weighed the costs and benefits of allowing jurors to ask questions, ultimately concluded that the potential benefits outweigh the potential costs, and established clear guidelines for trial judges to follow in order to safeguard a defendant's constitutional rights and the role of the jury as a neutral finder of fact. *See, e.g., Rawlings*, 522 F.3d at 408.

been fired from, (Trial Tr. Vol. IV 30-31), even though Corporal Phipps was not an eyewitness to the shooting and had never been qualified as an expert witness. Similarly, the practice of permitting jurors to ask clarifying or follow-up questions of witnesses directly, with the trial judge not serving any gatekeeping function before the question was asked in open court, exponentially increased the potential of a juror asking an inappropriate question. *DeBenedetto v. Goodyear Tire & Rubber Co.*, 754 F.2d 512, 516 (4th Cir. 1985). As noted in *Rawlings* — in which "prejudice was only narrowly averted" when the trial judge interrupted a witness to reformulate a juror question that had sought to elicit testimony on a "prohibited subject" that "counsel and the court agreed to avoid," 522 F.3d at 409, a case-by-case determination of whether juror questions are appropriate is necessary because the risks associated with permitting juror questions are higher in certain types of cases, particularly criminal cases in which a greater number of evidentiary privileges may exist or where evidence may have been suppressed to vindicate a constitutional right.

 Under these circumstances, the Superior Court erred when it allowed jurors to question witnesses in this case. We emphasize that, because there is no specific legal authority that expressly permits or prohibits the practice, both the Legislature and the Superior Court are free to establish a statute or court rule prohibiting the questioning of witnesses by jurors, or permitting the practice subject to formal procedures designed to safeguard the rights afforded by the Revised Organic Act of 1954 or other applicable law.[19] We recognize that voluminous scholarly research

---

[19] Although we decline to establish a specific procedure for the Superior Court to follow in the event it chooses to permit the practice, we note that the United States Court of Appeals for the Third Circuit has already adopted a model jury instruction that outlines a procedure that attempts to strike a balance between the benefits of jury questions and a criminal defendant's right to due process:

> Generally only the lawyers and I ask questions of the witnesses. However, I may allow you to submit questions for some witnesses. After the lawyers have finished asking their questions on direct and cross-examination but before I have excused the witness, if you have a question on an important matter and feel that an answer would be helpful to you in understanding the case, please raise your hand. Write your question on a piece of paper and hand it to my courtroom deputy, who will give the question to me. Do not discuss your question with any other juror.
> You should only submit questions that will help you decide important issues in this case. Also, the rules of evidence must be considered before any questions can be approved.

exists on the subject of whether jurors should be permitted to question witnesses, *see* 3D CIR. MODEL CRIM. JURY INSTRUCTIONS § 1.06 cmt (collecting studies), and that not all jurisdictions have endorsed the practice. Therefore, although the particular procedure employed in this case violated Fontaine's due process rights, the Legislature and/or Superior Court may wish to study this subject and establish formal guidelines governing juror questioning of witnesses, including prohibiting the practice in the event it is determined that it should not be permitted. However, we emphasize that this is an area in which "uniformity in procedure" and "fairness in administration" is required, SUPER. CT. R. 1, and that, in the event the practice is permitted, procedures must safeguard a defendant's constitutional rights and preserve the role of the jury as a neutral finder of fact.

## III. CONCLUSION

Although it is not fully clear whether the People charged Fontaine as a principal actor, an aider or abettor, or both, Ruben George's out-of-court statement, if credited by the jury, constituted sufficient evidence to sustain all of Fontaine's convictions under either theory of liability. Nevertheless, we reverse the June 4, 2010 Judgment and Commitment because the Superior Court abused its discretion when it permitted Corporal Phipps to narrate the surveillance videotape. Therefore, we remand the matter for a new trial to be conducted in a manner consistent with this Opinion, including not permitting questions of witnesses by jurors unless appropriate safeguards have been implemented to safeguard Fontaine's right to a fair trial.

---

Therefore, I will discuss your question with the lawyers, outside your hearing, and decide whether the question is allowed under the rules. If the question is not allowed under the rules, I will not ask it. You should not make any conclusions from the fact that I do not ask the question. You should not take it personally if I do not ask the question or if I ask it in a form that is different from what you submitted. If I do ask your question you should not give the answer to it any greater weight than you would give to any other testimony.

Remember that you are here to judge the facts impartially. You can submit a question if testimony of a witness is unclear on an important point or if, after the lawyers have finished questioning the witness, you think there is still an important question that has not been asked. You should not submit a question just to argue with a witness or a question that might suggest your view or conclusion about the outcome of the case.

3D CIR. MODEL CRIM. JURY INSTRUCTIONS § 1.06. *See also* Kevin F. O'Malley et al., 1A FEDERAL JURY PRACTICE AND INSTRUCTIONS § 10.05 (6th ed. 2006).