**RICHIE FONTAINE, Appellant/Defendant**

**v.**

**PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff**

S. Ct. Crim. No. 2010-0028

Supreme Court of the Virgin Islands

May 10, 2012

JOHN W. STRYKER, ESQ., SABRINA J. COHEN, ESQ., JAMES BERNIER, JR., ESQ., Stryker, Duensing, Casner & Dollison, St. Thomas, USVI, *Attorneys for Appellant.*

MATTHEW C. PHELAN, ESQ., BERNARD M. VANSLUYTMAN, ESQ., Department of Justice, St. Thomas, USVI, *Attorneys for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(May 10, 2012)

CABRET, *Associate Justice.* Following a jury trial, Richie Fontaine was found guilty of one count of robbery in the first degree, one count of robbery in the second degree, one count of assault in the first degree, and three related counts of unauthorized possession or use of a firearm during the commission of a crime of violence. *People v. Fontaine*, No. ST-09-CR-0000470, slip. op. at 1-2 (V.I. Super. Ct. June 11, 2010). Fontaine challenges his convictions on two grounds: that the trial court erred in denying his motion for acquittal because the prosecution did not present sufficient evidence to convict and that the trial court committed reversible error by ordering him to stand in front of the jury box so that the jurors could see a scar under his left eye in close proximity. For the reasons that follow, we affirm the trial court's June 11, 2010 Judgment and Commitment.

## I. FACTS AND PROCEDURAL HISTORY

On August 14, 2009, Edgar Francis was sitting outside his friend's home on the road leading to Coki Beach on St. Thomas, when three men approached him. All three were wearing blue scarves around their necks. When the three men were approximately thirty yards from Francis, two of

them started to run towards him and pulled the scarves up to their noses. Both men were armed with guns. One of the men ordered Francis to get on the ground and, after Francis failed to comply, snatched Francis's Gucci chain from around his neck. After a second order to get on the ground, Francis was shot three times. Francis, who was looking down when he was shot, was unable to see which of the two men shot him. Likewise, Francis was unable to determine whether only one or both of the men opened fire. Francis fell after being shot, and watched his two attackers, and the third man, flee the scene. Francis was taken to the hospital, treated for his wounds, and discharged on August 23, 2009. On August 26, 2009, Francis gave a statement to the police identifying Fontaine as the man who both ordered him to get on the ground and took the Gucci chain.

On September 15, 2009, Fontaine was arrested. On September 23, 2009, the People charged Fontaine by information with six counts: count one, First Degree Robbery in violation of V.I. CODE ANN. tit. 14, §§ 1861, 1862(2); count two, Unauthorized Use of a Firearm During the Commission of a First Degree Robbery in violation of 14 V.I.C. § 2253(a); count three, Second Degree Robbery in violation of 14 V.I.C. §§ 1861, 1863(1); count four, Unauthorized Use of a Firearm During the Commission of a Second Degree Robbery in violation of 14 V.I.C. § 2253(a); count five, First Degree Assault With the Intent to Rob in violation of 14 V.I.C. § 295(3); and count six, Unauthorized Use of a Firearm During the Commission of a First Degree Assault in violation of 14 V.I.C. § 2253(a).

At Fontaine's trial, Francis testified to the facts of the robbery set out above and again identified Fontaine as the attacker who ordered him to the ground and took his chain. Specifically, Francis testified that he had been acquainted with Fontaine for approximately five years prior to the robbery and that he was able to identify Fontaine by hearing his voice and seeing a scar below his left eye. After Francis finished testifying, the trial judge ordered, at the People's request and over Fontaine's objection, that Fontaine stand a few feet in front of the jury box. The People made this request so that the jury could determine if, in fact, Fontaine had a scar under his left eye as Francis testified.

In his defense, Fontaine called his mother, Rhea Anthony, who testified that Fontaine was with her on August 14, 2009. Fontaine also took the

stand himself and testified that he was with his mother on the day of the robbery.

The jury returned a guilty verdict on all six counts on March 12, 2010. On June 11, 2010, the Superior Court entered its judgment and commitment, which merged counts three and five into count one and counts four and six into count two for sentencing purposes. The court sentenced Fontaine to ten years for count one, the robbery in the first degree, and fifteen years for count two, the unauthorized use of a firearm during a robbery in the first degree. On May 19, 2010, Fontaine filed a timely notice of appeal.[1]

## II. JURISDICTION

We have jurisdiction over this criminal appeal pursuant to title 4, section 32(a) of the Virgin Islands Code, which provides that "[t]he Supreme Court shall have jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." A judgment in a criminal case is a final order from which an appeal may lie. *Brown v. People*, 49 V.I. 378, 380 (V.I. 2007).

## III. DISCUSSION

 Fontaine presents two arguments in support of his appeal: (1) that the government failed to present sufficient evidence to sustain a conviction for robbery in the first degree or unauthorized use of a firearm during the commission of a robbery in the first degree, and (2) that the trial court erred by ordering Fontaine to stand in close proximity to the jury box for a few moments to permit the jurors a better view of Fontaine. We consider each argument in turn.[2]

---

[1] Supreme Court Rule 5(b)(1) provides that "[a] notice of appeal filed after the announcement of a decision, sentence, or order — but before entry of the judgment or order — is treated as filed on the date of and after the entry of judgment." Therefore, even though Fontaine filed his notice of appeal before the Superior Court's Judgment was entered into the docket, it is timely.

[2] The People argue that the Joint Appendix prepared by Fontaine does not include a record as complete as necessary to determine some of the issues on appeal and that, as a result, Fontaine has waived review of all such issues. (Appellee Br. 15-17.) However, although it is the appellant's responsibility to prepare the physical document that will be the joint appendix under Rule 24(a), it is the *joint responsibility* of the parties to ensure that the contents of the

## A. The People presented sufficient evidence to support the conviction.

Fontaine first argues that no rational juror could have convicted him based on the evidence presented at trial. To support this contention, Fontaine makes three separate sufficiency arguments: (1) that the testimony by Francis could not be accepted by the jury, (2) that the People failed to disprove Rhea Anthony's alibi testimony, and (3) that the People failed to prove each element of the offenses charged.

Fontaine's first two arguments are both based on a misunderstanding of the standard of review this Court uses when considering the sufficiency of the evidence in an appeal of a criminal conviction. Fontaine first argues that the testimony presented by Francis could not have been accepted by any rational juror due to credibility issues brought up during cross examination, namely that Francis waited until twelve days after he was attacked to identify his attackers. Francis's credibility is of key importance because he was the only witness to place Fontaine at the scene of the robbery. Fontaine then builds on the first argument with the second, noting that the People did not discredit Anthony's alibi testimony other than to point out the possibility that her memory could have lapsed due to time and that she was the defendant's mother. Therefore, Fontaine contends, we must find that Anthony's testimony is more credible than that of Francis and thus there is insufficient evidence to prove that Fontaine was at the scene of the robbery on the day in question.

■ However, sufficiency challenges are not a forum to rehash credibility arguments that were unpersuasive to a jury. *See Latalladi v. People*, 51 V.I. 137, 145 (V.I. 2009) ("When appellants challenge the

---

joint appendix are sufficient to enable review. *See* VISCR 24(b). Furthermore, any transcripts of proceedings in the Superior Court are automatically a part of the appellate record, regardless of whether they are correctly included with the appendix. VISCR 10(a) ("The original papers and exhibits filed in the Superior Court, the transcript of proceedings, if any, and a certified copy of the docket entries prepared by the Clerk of the Superior Court shall constitute the record on appeal in all cases."). Finally, although failure to follow our rules may subject the appellant or his counsel or appellee or its counsel to sanctions, it does not prevent us from obtaining or relying on any part of the record. *See* VISCR 24(a) ("The fact that parts of the record are not included in the appendix shall not prevent *the parties* or the Supreme Court from relying on such parts. The appendix is a separate, freestanding document.") (emphasis added); VISCR 11(c) ("[T]he Supreme Court may request electronic or physical transmission of part or all of the record by the Clerk of the Superior Court in order to address a motion or the issues on appeal.").

sufficiency of the evidence presented at trial, it is well established that, in a review following conviction, all issues of credibility within the province of the jury must be viewed in the light most favorable to the government." (quoting *United States v. Gonzalez*, 918 F.2d 1129, 1132 (3d Cir. 1990))). "[W]e are not at liberty to substitute our own credibility determinations for those of . . . the jury." *Nanton v. People*, 52 V.I. 466, 486 (V.I. 2009) (quoting *United States v. Dillon*, 532 F.3d 379, 391 n.9 (5th Cir. 2008)). Instead, it is well established that an appellant who challenges the sufficiency of the evidence bears a " 'very heavy burden.' " *Latalladi*, 51 V.I. at 145 (quoting *United States v. Losada*, 674 F.2d 167, 173 (2d Cir. 1982)). When we consider challenges to the sufficiency of the evidence, " 'we apply a particularly deferential standard of review. Following a criminal conviction, we view the evidence presented at trial in a light most favorable to the People.' " *Stevens v. People*, 52 V.I. 294, 304 (V.I. 2009) (quoting *Smith v. People*, 51 V.I. 396, 398 (V.I. 2009)). Our only concern in a sufficiency challenge is whether or not any "rational trier of fact could have found the defendants guilty beyond a reasonable doubt and [whether] the convictions are supported by substantial evidence." *Latalladi*, 51 V.I. at 145 (quoting *Gonzalez*, 918 F.2d at 1132). Indeed, "[t]his evidence 'does not need to be inconsistent with every conclusion save that of guilt' in order to sustain the verdict." *Id.* (quoting *United States v. Allard*, 240 F.2d 840, 841 (3d Cir. 1957)). We are required to affirm "so long as [the evidence] establishes a case from which a jury *could* find the defendant guilty beyond a reasonable doubt." *United States v. Haywood*, 363 F.3d 200, 204 n.3, 45 V.I. 800 (3d Cir. 2004) (emphasis added).

██ Here, Francis, the victim, unequivocally testified that Fontaine was at the site of the robbery, approached Francis at a run with a gun drawn, ordered Francis to the ground, and snatched Francis's chain from around his neck. Francis testified that he identified Fontaine both through his voice and the presence of a scar below his left eye. The jury had the opportunity to see Francis and Fontaine both testify, and they clearly found Francis to be the more credible witness. It is not our place to reconsider that credibility determination. *See Nanton*, 52 V.I. at 486. Therefore, based on Francis's testimony, the jury had sufficient evidence to determine that Fontaine was present at the scene of the robbery and participated in snatching Francis's chain and shooting him. Accordingly, Fontaine's first two arguments are without merit.

■ Moving to his third sufficiency argument, Fontaine claims that the People failed to introduce sufficient evidence to prove every element of the crimes necessary to support his convictions. Turning first to his robbery conviction, Fontaine argues that the People failed to present evidence that Fontaine participated in the robbery. To convict Fontaine of robbery in the first degree as charged in the Information, the People must have presented sufficient evidence to prove: (1) that the defendant or "another perpetrator of the crime," (2) took personal property in the possession of another, (3) from his person or immediate presence, (4) against his will, (5) by means of force or fear, (6) while displaying, using, or threatening the use of a dangerous weapon. *See* 14 V.I.C. §§ 1861; 1862(2). Fontaine focuses on the second and fifth requirements.

■ As to the second requirement, Fontaine argues that because Francis was unable to identify who snatched his chain and because the chain was never recovered in Fontaine's possession, the People failed to prove that Fontaine took Francis's personal property. Additionally, Fontaine argues that, if the second man took the chain, there was insufficient evidence to show that that individual was an aider or abettor of the crime allegedly committed by Mr. Fontaine. These arguments are both flawed. The underlying factual premise is simply wrong — Francis clearly testified that Fontaine was the one who snatched the chain from him. (*See* Trial Tr. vol. 1, 51, March 11, 2010). At trial, the following exchange occurred between the People's attorney and Francis:

[Attorney Holder]: At any point in time, was property removed from you?
[Francis]: Yes.
[Attorney Holder]: Who removed the property?
[Francis]: Richie [Fontaine].
. . .
[Attorney Holder]: And what property was removed from you?
[Francis]: My chain and my pendant at the time.
[Attorney Holder]: Describe it?
[Francis]: I had a Gucci chain with a dollar coin pendant encased in gold, and when I was told the second time to get on the ground, the individual on my left, which I know is Richie Fontaine because of the scar and the voice, pulled my chain from me.

668

(Trial Tr. vol. 1, 51, Mar. 11, 2010.) Therefore, given Francis's unequivocal testimony identifying Fontaine as the individual that snatched his chain, we reject Fontaine's argument that there was insufficient evidence to sustain a conviction as to the second element of robbery in the first degree.

■■ As to the fifth requirement, the force or threat requirement, Fontaine argues that because Francis could not identify which individual shot him, or if either one shot him, the People failed to carry its burden. This argument is also unpersuasive. Francis's testimony provides that Fontaine approached Francis at a run, while wearing a mask and wielding a firearm. Fontaine then ordered Francis onto the ground, and snatched the chain — thereby breaking it — from around Francis's neck. We have no trouble determining that these facts by themselves are sufficient to establish the force necessary for robbery. *See Lewis v. Gov't of the V.I.*, 77 F. Supp. 2d 681, 684, 42 V.I. 175 (D.V.I. App. Div. 1999); 67 AM. JUR. 2D *Robbery* § 21. Even if those facts were not sufficient to establish the force necessary for robbery on their own, they are sufficient to permit a reasonable juror to infer that Fontaine, his associate, or both fired the shots notwithstanding Francis's inability to specifically identify which of his attackers shot him. *See Nanton*, 52 V.I. at 485, 487 n.11 (holding, in a sufficiency review, the jury's verdict should be upheld if it can be supported by any reasonable inference based on the evidence offered at trial).

■■ Finally, Fontaine argues that the government failed to provide sufficient proof to sustain the conviction for the unauthorized use of a firearm during the commission of a crime of violence. Specifically, Fontaine argues that because the definition of firearm in the Virgin Islands Code, found at 23 V.I.C. § 451(d), requires the weapon to be "capable of discharging ammunition," the People's failure to prove that Fontaine was not carrying a toy gun requires reversal. Fontaine's argument, however, ignores the plain language of the section under which he was convicted, which does not require the firearm to be capable of discharging ammunition. Title 14, section 2253(a) states

> Whoever, unless otherwise authorized by law, has, possesses, bears, transports or carries either, actually or constructively, openly or con-cealed any firearm, as defined in Title 23, section 451(d) of this code, loaded or unloaded, may be arrested without a warrant, and shall be sentenced to imprisonment of not less than one year nor more than five

years and shall be fined not less than $5,000 nor more than $15,000 or both the fine and imprisonment, except that if such person shall have been convicted of a felony in any state, territory, or federal court of the United States, or if such firearm *or an imitation thereof* was had, possessed, borne, transported or carried by or under the proximate control of such person during the commission or attempted commission of a crime of violence, as defined in subsection (d) hereof, then such person shall be fined $25,000 and imprisoned not less than fifteen (15) years nor more than twenty (20) years. The foregoing applicable penalties provided for violation of this section shall be in addition to the penalty provided for the commission of, or attempt to commit, the felony or crime of violence.

(Emphasis added). Section 2253(a), by its plain language, criminalizes the possession of any unauthorized firearm *or imitation thereof* during the commission of a crime of violence. *See Joseph v. Bureau of Corrections*, 54 V.I. 644, 653 (V.I. 2010) ("Where the language of a statute is plain and unambiguous, no further interpretation is needed."). By its use of the phrase "imitation thereof," the statute clearly criminalizes the possession of an item which appears to be a firearm, even if it is incapable of discharging ammunition, when it is possessed during a crime of violence. *See People v. Belardo*, 385 Fed. Appx. 149, 156-57 (3d Cir. 2010) (unpublished). Thus, as the Third Circuit set out when it recently discussed this provision of section 2253(a), "it is irrelevant whether a 'firearm or imitation thereof' is actually 'capable of discharging ammunition' when the implement is possessed during the commission of a crime of violence." *Id.* Accordingly, the People had no burden to prove[3] that the firearm was operable.

Fontaine relies on the same arguments — the credibility of Francis's identification, the identity of the chain-snatcher and shooter, and the operability of the gun — to challenge the four convictions the Superior Court merged for the purposes of sentencing — second degree robbery,

---

[3] We note that, even if the People were required to prove that the firearm was operable, there was ample evidence on this record for the jury to make that determination. Fontaine's argument again ignores the fact that we are required to permit the jury to make any reasonable inference based on the evidence. *See Nanton*, 52 V.I. at 485, 487 n.11. The jury could reasonably infer, based on the three shots fired and the injuries Francis sustained during the commission of the robbery, that at least one, if not both, of Francis's assailants' weapons were operational.

assault in the first degree, and the two related possession convictions. The reasons just given *supra* for rejecting Fontaine's arguments apply equally to Fontaine's four merged convictions. Therefore, the People presented sufficient evidence to convict Fontaine on all charges.

## B. The Superior Court did not abuse its discretion by permitting the jury to have a brief, close look at Fontaine.

■ Fontaine next argues that the trial court abused its discretion by ordering him to stand in front of the jury box for a few moments so the jury could get a good look at him. Following Francis's testimony about identifying Fontaine by the scar under his left eye, the court ordered Fontaine's presentation to the jury, without explaining to the jurors why he was being presented. Specifically, Fontaine argues that the presentation to the jury was unfair because the jury had a greater, and less stressful, opportunity to view Fontaine's scar than Francis had — while being robbed at gunpoint — on the day of the robbery. Fontaine bases his argument on title 5, section 885 of the Virgin Islands Code, which excludes evidence if "its probative value is substantially outweighed by the risk that its admission will . . . create a substantial danger of undue prejudice or of confusing the issues or of misleading the jury."[4] We review the Superior Court's evidentiary rulings for abuse of discretion, unless the decision involves application of a legal precept, in which case this Court exercises plenary review. *Corriette v. Morales*, 50 V.I. 202, 205 (V.I. 2008).

■ Title 5, section 885 of the Virgin Islands Code granted a trial judge wide discretion to determine if an otherwise relevant piece of evidence was so prejudicial to the defendant as to substantially outweigh its probative value. *See* former 5 V.I.C. § 885 (1997); *Mulley v. People*, 51 V.I. 404, 411 (V.I. 2009); *see also Gov't of the V.I. v. Albert*, 241 F.3d 344, 347 (3d Cir. 2001) ("[I]f judicial restraint is ever desirable, it is when a Rule 403 analysis of a trial court is reviewed by an appellate tribunal."). "Unfair prejudice is measured by the degree to which a jury responds

---

[4] This section was subsequently repealed and the Federal Rules of Evidence are now used in the Superior Court. *See Blyden v. People*, 53 V.I. 637, 658 n.15 (V.I. 2010). Regardless, because section 885 and Federal Rule of Evidence 403 are very similar, we have previously held that the interpretation of the federal rule is persuasive to our interpretation of section 885. *See Mulley v. People*, 51 V.I. 404, 411 (V.I. 2009).

negatively to some aspect of the evidence unrelated to its tendency to make a fact in issue more or less probable." *Krepps v. Gov't of the V.I.*, 47 V.I. 662, 674 (D.V.I. App. Div. 2006) (quoting *Lesko v. Owens*, 881 F.2d 44, 55 (3d Cir. 1989)), *aff'd* 438 Fed. Appx. 86 (3d Cir. 2010) (unpublished).

Here, we cannot say that the trial court abused its discretion by granting the People's request that Fontaine stand for a few moments in front of the jury box. Francis's testimony was that he identified the defendant by the presence of the scar and the sound of his voice. Therefore, the existence or non-existence of any scar under Fontaine's eye was very probative to the only major issue the defense raised — identification. Additionally, we note that courts routinely reject this kind of argument where a witness's identification is premised on the existence of some physical trait. *See Urquhart v. State*, 273 Ark. 486, 621 S.W.2d 218, 219 (Ark. 1981) (requiring defendant to remove shirt in front of jury, revealing scar, in order to verify witness's description was not prejudicial); *People v. Loyd*, 751 P.2d 1015, 1019 (Colo. App. 1988) (holding that trial court requiring defendant to stand in front of jury for thirty seconds to allow the jury to observe defendant closely was not prejudicial); *Furlow v. State*, 272 Ga. 795, 537 S.E.2d 61, 63 (Ga. 2000) (holding trial court did not abuse its discretion in permitting jury to approach defense table to better view defendant's eyes based on witnesses' testimony that perpetrator's eyes were unusual); *State v. Bowden*, 113 R.I. 649, 324 A.2d 631, 638 (R.I. 1974) (holding trial court did not abuse its discretion in requiring defendant to bare his forehead to jury, revealing tattoo, in order to verify witness's description); *see also* 29A AM. JUR. 2D *Evidence* § 966 ("In a criminal prosecution, the accused . . . may be required to display to the trier of fact wounds, scars, tattoos, teeth, or birthmarks or other distinguishing features.") (citing cases).

Furthermore, it is not clear what, if any, prejudice Fontaine suffered by being asked to stand before the jury box for a few moments. Fontaine does not argue that the jury would convict him based on some unrelated impact of having a scar. He does not assert that the jury might have considered him more violent, more likely to commit a crime, or even a bad person because of the presence of a single scar below one eye. *See United States v. Newsom*, 452 F.3d 593, 603 (6th Cir. 2006) (holding that the prejudicial impact of showing graphic tattoos outweighed minimal

672

probative value because jury might consider defendant a violent person and convict based on the tattoo rather than on the evidence). *But see United States v. Blasingame*, 219 Fed. Appx. 934, 946 (11th Cir. 2007) (unpublished) (holding that prejudicial impact of showing graphic tattoos did not substantially outweigh probative value where a witness's identification testimony was premised upon describing the tattoos). In summary, then, due to the strong probative value of the jury seeing Fontaine in light of Francis's identification testimony and Fontaine's failure to explain any potential prejudice from the jury having an opportunity to view him closely for a few moments, the Superior Court did not abuse its discretion.

## IV. CONCLUSION

We conclude that Fontaine's arguments lack merit. The fact that Fontaine's alibi witness, his mother, was not impeached, while the conflicting testimony of the victim was impeached, does not permit this Court to enter into the domain of the jury and make credibility assessments. Additionally, the People presented sufficient evidence to support Fontaine's conviction for robbery in the first degree and unauthorized use of a firearm during the commission of a robbery in the first degree. Finally, the trial court did not abuse its discretion in ordering Fontaine to stand near the jury box for a few moments to permit the jury to have a closer view of Fontaine where the existence of his scar had probative value to the identification issue. Therefore, we affirm the Superior Court's June 11, 2010 judgment.